IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| BETINA CARVER HOWARD, a/k/a ) <br> TINA HOWARD and husband, ) <br> ANTHONY HOWARD, ) <br> ) <br> Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> SMITH COUNTY, TENNESSEE; ) <br> RONNIE LANKFORD, Individually and ) <br> in his official capacity as Sheriff of ) <br> Smith County, Tennessee; CHRIS ) <br> HUDDLESTON, Individually and in his ) <br> official capacity as an employee of the ) <br> Smith County Sheriff's Department, ) <br> ) <br> Defendants ) | Case No.: 2:10-cv-0009 <br><br> JUDGE KEVIN H. SHARP <br><br> JURY DEMAND |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

TO THE JUDGE OF THIS HONORABLE COURT:

**INTRODUCTION**

This case began in the Circuit Court of Smith County, Tennessee, on December 31, 2009, Case Number 2009-CV-166. The Defendants removed it to the United States District Court for the Middle District of Tennessee on January 22, 2010.

Plaintiff would ask that if this Honorable Court will not use its supplemental jurisdiction, that any state causes for any and all parties be remanded to the Smith County Circuit Court.

## PRELIMINARY STATEMENT

This matter presents to the Court several issues of fact, which should be tried by a jury. The Smith County Sheriff's Office had a policy of no policy during the term of Defendant Ronnie Lankford, which was similar to the policy of the previous sheriff, Johnny Bane.

Defendant Ronnie Lankford was aware of a previous lawsuit involving Deputy Chris Huddleston. Smith County Circuit Court Case Number 6192 against the Smith County Sheriff's Department cost Smith County two hundred fifty-five thousand dollars ($255,000.00).[1] Defendant Huddleston and Defendant Lankford have both denied having any knowledge of the amount of settlement in that matter.[2] Defendant Huddleston even denied responsibility for hurting the child, a minor, Traci Shaw, and attributes all fault to the father of the minor child for allowing her to walk in the roadway, which is utterly ridiculous.[3]

Defendant Huddleston admits that he had a reputation for being an aggressive police officer.[4] Plaintiff avers that Chief Deputy Billy Lankford, brother of Defendant Ronnie Lankford, died during the pending litigation of this lawsuit and before his deposition could be taken, thus depriving Plaintiff of his testimony. Out of common courtesy, Plaintiffs' attorney did not press Defendant Lankford during depositions about his brother.

---

[1] See attached Exhibit "A"
[2] Ronnie Lankford Deposition, p. 32, ll. 17 – 25; p. 33, ll. 1 – 17; Chris Huddleston Deposition, p. 25, ll. 17 – 25; p. 26, ll. 1 – 8
[3] Chris Huddleston Deposition, p. 22, ll. 22 – 25; p. 23, ll. 1 – 25; p. 24, ll. 1 – 25; p. 25, ll. 1 - 16
[4] Chris Huddleston Deposition, p. 63, ll. 21 – 25; p. 64, ll. 1 - 7

The case, Warner v McMinn County, 2007 U.S. Dist. LEXIS 79024 (E.D. Tenn. Oct. 11, 2007) states that "It is unreasonable and thus a violation of the Fourth Amendment for a police officer, acting under color of law, to use physical force on a citizen who has been arrested and restrained, who is securely under the control of the police...." Further, the case of Coble v City of White House, 634 F.3d 865 (6th Cir. Tenn. 2011) should be referenced regarding handcuffing and videotaping.

**FACTS**

On January 4, 2009, at approximately 7:00 pm, Plaintiff Betina Howard and her brother, Jimmy Carver, left her residence to go out and eat.[4] They were at the restaurant "Chili's" around 7:30 pm or 8:00 pm that evening.[5] Plaintiff and her brother were there for approximately one and one-half to two hours.[6] While at the restaurant, Plaintiff had one margarita to drink with her dinner and Jimmy Carver had three or four shots of Hennessy.[7] After leaving "Chili's", Plaintiff and her brother went to visit their niece and an old friend.[8] While they were visiting Jimmy's friend, Plaintiff smoked a marijuana joint and Jimmy had one beer but no drugs.[9] After visiting with friends, Plaintiff and her brother drove to Plaintiff's home.[10]

---

[4] Betina Howard Deposition, p. 10, ll. 2 - 8
[5] Betina Howard Deposition, p. 12, ll. 2 & 3
[6] Betina Howard Deposition, p. 12, ll. 15 - 17
[7] Betina Howard Deposition, p. 12, ll. 18 – 25; p. 13, ll. 1 - 4
[8] Betina Howard Deposition, p. 13, ll. 12 - 14
[9] Betina Howard Deposition, p. 13, ll. 23 – 25; p. 15, ll. 9 – 15; p. 16, ll. 4 – 13; Jimmy Carver Deposition, p. 12, ll. 2 - 6
[10] Betina Howard Deposition, p. 20, ll. 7 - 9

When approaching Plaintiff's home, Plaintiff and her brother were engaged in conversation and Jimmy missed Plaintiff's driveway.[11] Having done this, Jimmy pulled off on the shoulder of the road, looked both ways, pulled back out onto the road and drove back to Plaintiff's home.[12]

After Plaintiff and her brother exited the vehicle, they were on their way into the house when they heard sirens and stopped to see where the sirens were going.[13] Within a few seconds, Plaintiff and her brother saw a Smith County Sheriff's Department car pull into her driveway.[14] This patrol car was being driven by Defendant, Deputy Chris Huddleston.[15] Deputy Huddleston resets the video camera in his patrol car and then tells Jimmy Carver to get back into the vehicle.[16] Deputy Huddleston never told Plaintiff to get back in the car.[17] Jimmy complies with Deputy Huddleston's request but left the door of the vehicle open.[18] Deputy Huddleston approached the vehicle and asked for Jimmy's license and registration.[19] While Deputy Huddleston is talking to Jimmy, two or three other patrol cars arrive at the scene and all of the officers get out of their cars.[20] Deputy Huddleston then told Jimmy to get out of the car so that he could perform sobriety tests.[21] During this time, Plaintiff was standing approximately two feet behind Deputy Huddleston, Jimmy was standing in front of Deputy Huddleston and Officer Gregory was

---

[11] Betina Howard Deposition, p. 21, ll. 19 & 20
[12] Jimmy Carver Deposition, p. 50, ll. 12 - 24
[13] Betina Howard Deposition, p. 20, ll. 22 – 25; p. 21, ll. 1 – 10; Jimmy Carver Deposition, p. 19, ll. 21 - 25
[14] Betina Howard Deposition, p. 21, ll. 8 - 10
[15] Betina Howard Deposition, p. 21, l. 18
[16] Betina Howard Deposition, p. 24, ll. 2 - 5
[17] Betina Howard Deposition, p. 24, ll. 20 - 23
[18] Betina Howard Deposition, p. 24, ll. 24 – 25; p. 25, ll. 10 - 13
[19] Betina Howard Deposition, p. 25, ll. 1 - 3
[20] Betina Howard Deposition, p. 25, ll. 23 – 25; p. 26, l. 1
[21] Betina Howard Deposition, p. 25, ll. 17 - 21

beside Jimmy.[22] While Deputy Huddleston is administering these tests to Jimmy, Plaintiff is asking him why he is in her yard and telling him that he is not going to arrest her brother in her yard.[23] Deputy Huddleston told Plaintiff to get out of the way and she just stood there.[24] Deputy Huddleston grabbed her, turned her around, pulled her arms behind her back and handcuffed her.[25] Then Deputy Huddleston drags Plaintiff backward by the handcuffs and also by the strap of her purse that is hanging on the handcuffs, while she was screaming that he was hurting her. Plaintiff did not try to resist arrest in any way, nor did she say anything while being cuffed.[26] Jimmy and Plaintiff's husband told Deputy Huddleston that he did not have to pull her backwards.[27] Deputy Huddleston then told Plaintiff's husband that the best thing for him to do was to go back in the house.[28]

Deputy Huddleston put Plaintiff is the backseat of his patrol car and went back to performing sobriety tests on Jimmy Carver.[29] At some point, Plaintiff was transferred to Officer Gregory's car and then to Officer Maynard's car.[30] Deputy Huddleston arrested Jimmy and put him in his patrol car.[31] Plaintiff was then transported to Smith County

---

[22] Betina Howard Deposition, p. 38, ll. 7 - 17
[23] Betina Howard Deposition, p. 33, ll. 1 – 20; Jimmy Carver Deposition, p. 24, ll. 16 - 19
[24] Betina Howard Deposition, p. 37, ll. 23 – 25; p. 38, ll. 1 - 6
[25] Betina Howard Deposition, p. 38, ll. 22 – 25; p. 39, ll. 1 – 25; p. 39, ll. 1 – 25; p. 40, ll. 1 – 25; p. 41, ll. 1 – 25; p. 42, ll. 1 – 25; p. 43, ll. 1 – 25; p. 44, ll. 1 – 25; p. 45, ll. 1 – 25; p. 46, ll. 1 - 25
[26] Betina Howard Deposition, p. 43, ll. 8 – 16; Jimmy Carver Deposition, p. 41, ll. 19 – 25; p. 42, ll. 1 - 5
[27] Betina Howard Deposition, p. 41, ll. 20 - 23
[28] Betina Howard Deposition, p. 41, ll. 20 - 22
[29] Betina Howard Deposition, p. 44, ll. 19 – 25; p. 45, ll. 1 - 6
[30] Betina Howard Deposition, p. 48, ll. 6 - 18
[31] Betina Howard Deposition, p. 47, l. 25; p. 48, ll. 1 - 5

5

Sheriff's Department where she was booked and released on bond.[32]  All criminal charges against Plaintiff were later dismissed.[33]

## LAW AND ARGUMENT

**1.   Legal Standard for Summary Judgment**

For brevity reasons, Plaintiff agrees with Defendants that the standard for Summary Judgment as stated in their Memorandum of Law is the correct standard for a federal court summary judgment motion.

**2. Howard <u>can</u> establish her state law claims against Smith County and Defendant Huddleston.**

    **(a)   Tennessee Governmental Tort Liability Act Immunity ("TGTLA")**

Plaintiff alleges a cause of action involving intentional and reckless misconduct against Defendant Huddleston. According to the following excerpts from <u>Ezell v. Cockrell</u>, 902 S.W.2d 394 (Tenn. 1995), Defendant Huddleston is not immune from suit for damages due to his reckless misconduct.

> "The public duty doctrine is not expressly listed as an exception to the waiver of immunity for injuries resulting from negligent acts or omissions of governmental employees; however, the duty of care historically imposed upon such employees is not redefined by the statute. Consequently, that standard of care remains the same. Moreover, the overall statutory scheme supports continued recognition of the doctrine. Unlike the statutes in those jurisdictions which have abandoned the public duty doctrine, the Tennessee Governmental Tort Liability Act does not abolish governmental immunity. Instead, the Act reaffirms and codifies the general rule of immunity for governmental entities, and in fact, extends the rule of immunity beyond its common law scope to proprietary functions." Ezell v. Cockrell, 902 S.W.2d 394, 400 (Tenn. 1995).

---

[32] Betina Howard Deposition, p. 49, ll. 23 – 25; p. 52, ll. 19 & 20
[33] Betina Howard Deposition, p. 96, l. 25; p. 97, ll. 1 - 5

6

Case 2:10-cv-00009   Document 35   Filed 07/06/11   Page 6 of 18 PageID #: 247

"States adhering to the public duty doctrine, including Tennessee, recognize an exception to the rule of no-liability that applies where a "special relationship" exists between the plaintiff and the public employee, which gives rise to a "special duty" that is more particular than the duty owed by the employee to the public at large." Ezell at 401.

"For purposes of an action against a public official, a special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct." Ezell at 402.

As a result of the foregoing it is apparent that the public duty doctrine applies to this case. Defendant, Deputy Chris Huddleston, intentionally committed the tort of assault and battery and further exhibited reckless misconduct throughout the incident in question. Smith County is also liable as Huddleston committed the acts in the course and scope of his employment.

(b) **Plaintiffs' State Law Claims Have No Elemental Deficiencies.**

(i) **Negligent Infliction of Emotional Distress ("NIED")**

Defendant states in their Summary Judgment Motion that an "NIED claim is analyzed under general principles of negligence." According to the ninth edition of the Tennessee Pattern Jury Instructions – Civil, Section T.P.I. – Civil 3.05, negligence is "the failure to use ordinary or reasonable care. It is either doing something that a reasonably careful person would not do, or the failure to do something that a reasonably careful person would do, under all of the circumstances in this case". According to the 2008 – 2009 edition of Tennessee Elements of an Action, § 16:1, the essential elements to pleading a claim for negligence under Tennessee law are:

(1) A duty of care owed by the defendant to the plaintiff. Under this element, Defendant Huddleston as a deputy for the Smith County Sheriff's Department owed a duty of care to Plaintiff by not using excessive force when arresting her.

(2) Conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty. Under this element, Defendant Huddleston using excessive force when arresting Plaintiff amounts to a breach of the duty of care owed to Plaintiff.

(3) An injury or loss. Under this element, Plaintiff suffered an injury to her shoulder by being dragged backward to the car by Defendant Huddleston when same was not necessary.

(4) Causation in fact. Under this element, Defendant Huddleston's excessively forceful action of dragging Plaintiff backward by the strap of her purse and the handcuffs caused Plaintiff to suffer the injury to her shoulder.

(5) Proximate or legal causation. Proximate cause is defined as a happening which results in an event, particularly injury due to negligence. Under this element, the happening is the arrest of Plaintiff and the event which occurred is the injury to her shoulder due to Defendant Huddleston's negligence. The incident has caused Plaintiff to increase her medication.

### ii. Negligent Hiring

Defendants state in their Summary Judgment Motion that Plaintiff "cannot show any information received by Smith County regarding Deputy Huddleston put the County on notice that he had any propensity to violate the constitutional rights of a citizen". However, Deputy Huddleston had a lawsuit pending against him when he began working

for Defendant Ronnie Lankford. Defendant Lankford took office as Sheriff of Smith County on September 1, 2006,[34] and the lawsuit against Deputy Huddleston was not settled until March 8, 2007.[35] Defendant Lankford stated that he never asked Deputy Huddleston if he was the subject of any lawsuit and that he thought that the lawsuit against Deputy Huddleston had been settled before he hired him.[36] At the time of the lawsuit, Deputy Huddleston was only a reserve with the Smith County Sheriff's Department.[37] He was not hired on full time until after he came back from his five or six-week leave after the incident which was the subject of the lawsuit.[38] Deputy Huddleston was never disciplined over his involvement with that lawsuit.[39]

Defendant Lankford also stated that he was not aware that Deputy Huddleston was taking any type of prescription medication when he hired him.[40] Defendant Lankford stated that the thought the medication would show up on the drug test.[41] However, Defendant Lankford later stated that he never seen that Deputy Huddleston passed a drug test.[42]

The previous lawsuit against Deputy Huddleston and no proof that he had passed a drug test was relevant information that Smith County could have used to know that Deputy Huddleston had a propensity to violate the law and further the propensity to violate the constitutional rights of a Smith County citizen.

---

[34] Ronnie Lankford Deposition, p. 22, ll. 2 – 4
[35] Ronnie Lankford Deposition, p 31, l. 25
[36] Ronnie Lankford Deposition, p. 32, ll. 17 - 20
[37] Chris Huddleston Deposition, p. 18, ll. 15 – 25; p. 19, ll. 1 - 5
[38] Chris Huddleston Deposition p. 28, ll. 18 - 21
[39] Chris Huddleston Deposition p. 26, ll. 9 & 10
[40] Ronnie Lankford Deposition, p. 33, ll. 18 - 23
[41] Ronnie Lankford Deposition, p. 34, ll. 8 - 13
[42] Ronnie Lankford Deposition, p. 35, ll. 5 - 12

### iii. Negligent Training and Supervision

Defendant Lankford states that the policy and procedure manual he had for the Smith County Sheriff's Department was not in effect when he took office and that the deputies followed verbal procedures.[43] Defendant Lankford also stated that some of his deputies were trained by J.D. Masters but that he is not aware of Masters' qualifications to train and teach.[44]

Deputy Huddleston stated that he was not aware that any employee of the Sheriff's Department was ever disciplined under the previous sheriff's term in office or under Defendant Lankford.[45] He also stated that there is no discipline at the Smith County Sheriff's Office that he is aware of.[46]

This negligence in training, supervision, and discipline may not be public knowledge; therefore Plaintiff could not have had knowledge of the training of Deputy Huddleston until after discovery. Defendant Lankford allowed a person to train teach some of his officers without making himself aware of the person's qualifications. He further was not aware of what specifically was taught. As a result of this negligent training and supervision, an officer violated the constitutional rights of a Smith County citizen.

### iv. Assault and Battery

Defendants' assertion that the TGTLA does not allow a governmental entity to be sued directly for the intentional tort of assault and battery by one of its employees is misplaced. In <u>Limbaugh v. Coffee Medical Center</u>, 59 S.W.3d 73 (Tenn.

---

[43] Ronnie Lankford Deposition, p. 48, ll. 9 - 20
[44] Ronnie Lankford Deposition, p. 50, ll. 21 – 25; p. 51, ll. 1 - 14
[45] Chris Huddleston Deposition, p. 26, ll. 11 - 13
[46] Chris Huddleston Deposition, p. 26, ll. 14 - 16

2001), the Tennessee Supreme Court clearly held that governmental entities are not immune from suit for the intentional tort of assault and battery. Specifically the Supreme Court stated "[a]ccordingly, we hold that section 29-20-205 of the GTLA removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of *only those specified torts enumerated in subsection (2)*." Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 84 (Tenn. 2001).

Tennessee Code Annotated § 29-20-205 clearly states that, "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:....(2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205. Since assault and battery is not a tort specified in section (2), immunity from suit is removed.

3. **Plaintiffs' 42 U.S.C. § 1983 claims against Deputy Huddleston <u>should not</u> be dismissed.**

To prove a § 1983 claim, the Plaintiff must establish (1) the deprivation of a right secured by the constitution or laws of the United States; and (2) that the person causing such deprivation was acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 159, 155 (1978). Defendants have stated in their Motion for Summary Judgment that Plaintiff is unable to prove that she suffered a deprivation of any right secured by the constitution.

However, according to Phelps v. Coy, 286 F.3d 295 (6th Cir. Ohio 2002), "In addressing an excessive force claim brought under 42 U.S.C.S. § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. Graham v. Connor, 490 U.S. 386, 394 (1989) The question of which amendment supplies the plaintiff's rights is not merely academic, for the standards of liability vary significantly according to which amendment applies. Phelps at 299. A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the objective reasonableness test of the Fourth Amendment. Darrah v. City of Oak Park, 255 F. 3d 301, 306 (6th Cir. 2001).Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." Phelps at 299.

"If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. That standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure." Phelps at 299

"Courts evaluating the reasonableness of force used should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight". Burchett v. Kiefer, 310 F.3d 937 (6th Cir. Ohio 2002). Plaintiff was not being arrested for a severe crime. Deputy Huddleston stated that Plaintiff was arrested for disorderly conduct. Tennessee Code § 39-17-305 states that a person is guilty of disorderly conduct if one of the following applies:

> 39-17-305. Disorderly conduct. - (a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm: (1) Engages in fighting or in violent or threatening behavior; (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose. (b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

However, a reasonable officer would have known that Plaintiff was not guilty of disorderly conduct. According to the definition of "disorderly conduct" in Black's Law Dictionary and according to Tennessee Code Title 39, Chapter 17, Part 3, Section 305, Plaintiff was not guilty of disorderly conduct. Black's Law Dictionary states that disorderly conduct is "behavior that tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality." Plaintiff was on her own property and was not showing any threatening behavior. If Deputy Huddleston did tell Plaintiff to get back in the vehicle, which Plaintiffs and Defendants disagree about, he did not tell her to do that in order to maintain public safety in dangerous proximity to a fire, hazard or other emergency. Plaintiff did not create a hazardous or physically offensive condition and she was not preventing others from carrying on lawful activities. Plaintiff was simply annoying Deputy Huddleston by asking him questions, cussing at him, and questioning his authority.

a. **Qualified immunity**

"The right to be free from "excessively forceful handcuffing" is a clearly established right for qualified immunity purposes….." Burchett v. Kiefer, 310 F.3d 937 (6th Cir. Ohio 2002). The force used by Deputy Huddleston that night in effecting the arrest on Plaintiff was not reasonable. When courts apply the objective reasonableness

standard to the situation, they "must balance the consequences to the individual against the government's interests in effecting the seizure. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. Courts evaluating the reasonableness of force used should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Burchett v. Kiefer, 310 F.3d 937 (6th Cir. Ohio 2002). Defendants have stated in their Motion for Summary Judgment that "unless the answer to all three questions is yes, qualified immunity is proper." According to this standard, Plaintiff was not being arrested for a severe crime, she did not pose an immediate threat to the safety of the officer or others and she was not actively resisting arrest or attempting to evade arrest by flight. It is not contradicted that Plaintiff did not resist arrest. It was therefore not reasonable for the Defendant to drag the Plaintiff backward, injuring her as a result. Therefore, qualified immunity does not apply to Deputy Huddleston in this case.

    **b.    Arrest-related excessive force claims – Fourth Amendment Analysis**

Plaintiff again restates that when courts apply the objective reasonableness standard to the situation, they "must balance the consequences to the individual against the government's interests in effecting the seizure." This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. Courts evaluating the reasonableness of force used should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Burchett v. Kiefer, 310 F.3d 937 (6th Cir. Ohio 2002). Defendants have stated in their Motion for Summary Judgment that "unless the answer to all three questions is yes, qualified immunity is proper." According to this standard, Plaintiff was not being arrested for a severe crime, she did not pose an immediate threat to the safety of the officer or others and she was not actively resisting arrest or attempting to evade arrest by flight. Therefore, under the fourth amendment analysis of the objective reasonableness standard, Deputy Huddleton did use excessive force in effecting the arrest of Plaintiff.

### c. Probable cause for arrest

According to Beck v. Ohio, 379 U.S. 89, 91 (1964), "Where the constitutional validity of an arrest made upon information is challenged, it is incumbent upon the prosecution to show with specificity what the informer actually said, and why the arresting officer thought the information was credible." Plaintiff does not dispute that she cursed at Deputy Huddleston and raised her voice at him while he was performing the sobriety tests on her brother. This is not sufficient evidence for Deputy Huddleston to believe that Plaintiff was guilty of disorderly conduct. Deputy Huddleston admitted that he has been cussed previously during an investigation and did not arrest the person who cussed him. He also admitted that he uses cuss words.[47] Cussing someone and raising your voice at them are not sufficient causes for a person to be arrested. Plaintiff was simply annoying Deputy Huddleston and he could have told her to go in the house instead of arresting her. Plaintiff was not a threat to Deputy Huddleston, the other officers or to the public.

---

[47] Chris Huddleston Deposition, p. 42, l. 25; p. 43, ll. 1 - 10

15
Case 2:10-cv-00009 Document 35 Filed 07/06/11 Page 15 of 18 PageID #: 256

Also according to Beck v. Ohio, 379 U.S. 89, 91 (1964), "In determining the constitutional validity of an arrest without a warrant, the arresting officer's knowledge of the suspect's physical appearance and previous record is neither inadmissible nor entirely irrelevant upon the issue of probable cause; but knowledge of either or both of these facts does not constitute probable cause." At the time of Plaintiff's arrest, she was 5' 7" tall and weight 150 pounds. She was not a threat to Deputy Huddleston and to two or three other police officers. It should be noted that none of the other officers used any force on the Plaintiff.

4. **Plaintiffs' state claims against Deputy Huddleston should not be dismissed**

   a. **Supplemental Jurisdiction**

   This Honorable Court should exercise supplemental jurisdiction over the state law claims because the federal claims should not be dismissed as stated above.

   b. **Common Law Immunity**

   On the basis of the arguments set forth in section 3.a. above – Qualified Immunity, Deputy Huddleston is not entitled to common law immunity, and summary judgment should not be granted relative to all state law claims asserted against him.

   c. **Elements of Claims**

   Deputy Huddleston is not entitled to common law immunity as to all claims and Plaintiff is able to present evidence to establish the elements of each claim.

   i. **Negligent Infliction of Emotional Distress**

   See argument in Section 2(b)(i).

### ii. Intentional Infliction of Emotional Distress

Deputy Huddleston's actions on the night of January 4, 2009, were unconstitutional, excessive, and outrageous. The manner that he dragged Plaintiff backward to the patrol car, with her screaming that he was hurting her, should not be tolerated by a civilized society. It is comparable to when someone is walking a dog and the dog does not want to walk so the person holding the leash pulls and pulls until the dog has no choice but to move. The only difference there is that Plaintiff was not resisting in any way, she was merely trying to get Deputy Huddleston to stop dragging her, so as to relieve the pain she was experiencing.

Plaintiff was taking an antidepressant medication before this incident, however, after this incident the dosage had to be increased to two tablets a day instead of just one.[49] Plaintiff has had nightmares, has not been able to enjoy daily activities such as doing hair, cooking, cleaning, and intimate relations with her husband as a result of these actions of Deputy Huddleston.[50]

### iii. False Arrest / False Imprisonment / Malicious Prosecution

As set forth in section 3.c., Deputy Huddleston did not have probable cause to arrest Plaintiff on the night of January 4, 2009. Accordingly, the claims for false arrest, false imprisonment, and malicious prosecution should not be dismissed.

---

[49] Betina Howard Deposition, pg. 98, ll. 23-25; p. 99, ll. 1-22
[50] Betina Howard Deposition, pg. 100, ll. 13 – 22

## IV. CONCLUSION

Plaintiffs, Betina Carver Howard and Anthony Howard, would ask that the Smith County, Ronnie Lankford, and Chris Huddleston Motion for Summary Judgment be denied.

Respectfully submitted this 6th day of July, 2011.

/s/ Richard M. Brooks
**RICHARD M. BROOKS - #4308**
130 Third Avenue West
Carthage, TN 37030
(615) 735-0807 – Phone
(615) 735-1921 – Fax
utkrmb@comcast.net - Email


/s/ Michael Savage
**MICHAEL SAVAGE - #020276**
101 East Court Square
Livingston, Tennessee 38570-1839
(931) 823-3690 – Phone
(931) 823-3693 – Fax
mslaw@twlakes.net - Email

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 6th day of July, 2011, a true and exact copy of the foregoing has been served in accordance with the ECF Guidelines and the Federal Rules of Civil Procedure upon the following parties:

**ROBYN BEALE WILLIAMS
and EL SHON D. RICHMOND**
Farrar and Bates, LLC
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219

/s/ Richard M. Brooks
RICHARD M. BROOKS