IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

BETINA CARVER HOWARD, a/k/a )
TINA HOWARD and husband, )
ANTHONY HOWARD, )
)
    Plaintiffs )    Case No.: 2:10-cv-0009
)
) JUDGE KEVIN H. SHARP
vs. )
) JURY DEMAND
SMITH COUNTY, TENNESSEE; )
RONNIE LANKFORD, Individually and )
in his official capacity as Sheriff of )
Smith County, Tennessee; CHRIS )
HUDDLESTON, Individually and in his )
official capacity as an employee of the )
Smith County Sheriff's Department, )
)
    Defendants )

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

    1.    Plaintiff Betina Howard resides in Carthage, Tennessee, with her husband, Anthony Howard. (Betina Howard Dep. 5-6)

    **RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 1 is not disputed.

    2.    She has worked as a hair stylist for 28 years. (Howard Dep. 69:14-17)

    **RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 2 is not disputed.

    3.    At the time of his encounter with Plaintiff, Deputy Chris Huddleston was a Deputy Sheriff with the Smith County Sheriff's Office. (Chris Huddleston Dep. 55-58)

1

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 3 is not disputed.

4. At the time of his encounter with Plaintiff, Deputy Chris Huddleston had successfully completed Basic Police School training from the Tennessee Law Enforcement Training Academy and received In-Service Training and Patrol Tactics Training, among numerous other training classes. (Huddleston Dep. 55-58)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 4 is not disputed. However, even the Defendant Lankford did not know if some of the persons who conducted the training were qualified. Defendant Lankford stated that some of his deputies were trained by J.D. Masters but that he is not aware of Masters' qualifications to train and teach. (Ronnie Lankford Deposition, p. 50, ll. 21 – 25; p. 51, ll. 1 – 14)

5. On January 4, 2009, Mrs. Howard went out to a restaurant with her brother, Jimmy Carver, to celebrate his birthday. (Howard Dep. 12:7-9)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 5 is not disputed.

6. Mrs. Howard had a margarita with dinner, while Carver consumed three or four alcoholic beverages. (Howard Dep. 12-13)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 6 is not disputed.

7. Mrs. Howard and Carver then drove to Lebanon, Tennessee where Mrs. Howard smoke a marijuana joint with friends. (Howard Dep. 16-18)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 7 is not disputed.

8. When Mrs. Howard and her brother arrived at Howard's home at about 10:30 p.m., Carver initially drove past her driveway and did a U-turn back to the driveway. (Howard Dep. 21:17-21; 94:25-95:2)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 8 is not disputed.

9. As they exited the car they heard sirens and saw that a patrol car was coming up her driveway. (Howard Dep. 20:18-21:1)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 9 is not disputed.

10. Deputy Huddleston spoke over his bull horn and directed one or both of them to get back into the vehicle. (Carver Dep. 21:23-23:3; Huddleston Dep. 84:1-2)

**RESPONSE:** For the purposes of this Summary Judgment Motion, it is not disputed that Deputy Huddleston directed Plaintiff's brother to get back in the vehicle. It is disputed that he ever told Plaintiff to get back in the vehicle. (Betina Howard Deposition, p. 24, ll. 20 – 23).

11. Carver complied, Howard did not. (Carver Dep. 22:11-15)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 11 is not disputed, except that it is disputed that he ever told Plaintiff to get back in the vehicle. (Betina Howard Deposition, p. 24, ll. 20 – 23).

12. Deputy Huddleston asked Carver whether he had had anything to drink to which Carver responded, "One beer." (Carver Dep. 23:13-24:3)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 12 is not disputed.

13. Deputy Huddleston asked Carver to do a sobriety test and Carver complied. (Carver Dep. 24:9-13)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 13 is not disputed.

14. Back up officers had arrived by this time, including Officer Shane Gregory of the Carthage Police Department. (Carver Dep. 24-25; B. Howard Dep. 25:20-26:4)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 14 is not disputed. However, it should be noted that Officer Shane Gregory worked for the **South** Carthage Police Department at the time of this incident, not Carthage, as they are separate.

15. As Deputy Huddleston began to administer the sobriety tests Mrs. Howard stood close behind him and angrily cursed him, telling him that she would not let him give her brother a field sobriety test in her driveway, and that he "wasn't giving [her] brother a fucking DUI." (Howard Dep. 31-32)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 15 is not disputed.

16. Mrs. Howard's angry statements led her husband to tell her to be quiet. (Howard Dep. 36:22-24)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 16 is not disputed.

17. Mrs. Howard's angry statements also led Deputy Huddleston to advise her to "Step Back". (Howard Dep. 37:15-18)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 17 is disputed in that Deputy Huddleston's reason for telling Mrs. Howard to "step back" was because he was performing field sobriety tests on her brother, Jimmy Carver. (Betina Howard Deposition, p. 85, ll. 19 – 23)

18. When Mrs. Howard did not immediately comply, Deputy Huddleston cuffed her, and walked her to a nearby patrol car by the handcuffs. (Howard Dep. 37:18-24; Anthony Howard Dep. 26:24-25)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 18 is not disputed in that Mrs. Howard did walk to a nearby patrol car. However, she was walking backward the whole time and was struggling to stay afoot. Deputy Huddleston grabbed her, turned her around, pulled her arms behind her back and handcuffed her. Then Deputy Huddleston drags Plaintiff backward by the handcuffs and also by the strap of her purse that is hanging on the handcuffs, while she was screaming that he was hurting her. Plaintiff did not try to resist arrest in any way, nor did she say anything while being cuffed. Jimmy and Plaintiff's husband told Deputy Huddleston that he did not have to pull her backwards. (Betina Howard Deposition, p. 38, ll. 22 – 25; p. 39, ll. 1 – 25; p. 39, ll. 1 – 25; p. 40, ll. 1 – 25; p. 41, ll. 1 – 25; p. 42, ll. 1 – 25; p. 43, ll. 1 – 25; p. 44, ll. 1 – 25; p. 45, ll. 1 – 25; p. 46, ll. 1 – 25; Betina Howard Deposition, p. 43, ll. 8 – 16; Jimmy Carver Deposition, p. 41, ll. 19 – 25; p. 42, ll. 1 – 5; Betina Howard Deposition, p. 41, ll. 20 – 23)

19. Mrs. Howard was transported by Sgt. Ronnie Maynard to the Smith County Sheriff's Office, where she was booked and released on bond after approximately 15 minutes. (Howard Dep. 52:19-53:12)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 19 is not disputed.

20. The jail intake form reveals that she claimed no injury. (Declaration of Lt. Trusty, Ex. E)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 20 is not disputed. However, the Plaintiff did seek medical attention on January 7, 2009. (Medical Records of Plaintiff dated 1/7/09)

21. Mrs. Howard was charged with disorderly conduct, resisting arrest, drug possession, and possession of drug paraphernalia with intent to use. (Trusty Dec., Ex. E)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 21 is not disputed.

22. Dr. Moss's records for Mrs. Howard's visit on January 7, 2009, do not show that Mrs. Howard complained of shoulder pain. (Hensley Aff., Ex. A at pp. 1-2)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 22 is not disputed.

23. Moss's records for Mrs. Howard shows that during Mrs. Howard's next visit on March 2, 2009, she complained of several abdominal pain, but again made no mention of shoulder pain or discomfort. (Hensley Aff., Ex. A at pg. 3)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 23 is not disputed.

24. On a visit with Dr. Moss on May 13, 2009, Mrs. Howard complained about left arm and shoulder pain and trouble raising it, relative to a "fall 2 months ago + think may have broken a rib on left side." (Hensley Aff., Ex. A at pg. 4)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 24 is not disputed.

25. Mrs. Howard was already taking anti-depressant and anti-anxiety medications before her arrest on January 4, 2009. (Howard Dep. 98:15 – 99:6.)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 25 is disputed in that Mrs. Howard was only taking one nerve pill per day before this arrest and after the arrest, she had to take two nerve pills per day. (Betina Howard Deposition, p. 98, ll. 23 – 25; p. 99, ll. 1 – 22)

26. Mrs. Howard has not sought counseling since this arrest. (Howard Dep. 99:7 – 100:10.)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 26 is disputed in that Mrs. Howard has not sought counseling with a psychiatrist or psychologist but has continued counseling with Dr. Moss as the medical records make note that Plaintiff's psychiatric condition was "tearful". (Medical Records of Plaintiff dated 7/19/09)

27. Mrs. Howard did not know Deputy Huddleston before this incident occurred. (Howard Dep. 26:10-12.)

RESPONSE: For the purposes of this Summary Judgment Motion, paragraph 27 is not disputed.

28. Mrs. Howard she stayed on her feet and never fell during her arrest. (Howard Dep. 42:4-6; 26:2-15)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 28 is not disputed. However, she was walking backward the whole time and was struggling to stay afoot. Deputy Huddleston grabbed her, turned her around, pulled her arms behind her back and handcuffed her. Then Deputy Huddleston drags Plaintiff backward by the handcuffs and also by the strap of her purse that is hanging on the handcuffs, while she was screaming that he was hurting her. Plaintiff did not try to resist arrest in any way, nor did she say anything while being cuffed. Jimmy and Plaintiff's husband told Deputy Huddleston that he did not have to pull her backwards. (Betina Howard Deposition, p. 38, ll. 22 – 25; p. 39, ll. 1 – 25; p. 39, ll. 1 – 25; p. 40, ll. 1 – 25; p. 41, ll. 1 – 25; p. 42, ll. 1 – 25; p. 43, ll. 1 – 25; p. 44, ll. 1 – 25; p. 45, ll. 1 – 25; p. 46, ll. 1 – 25; Betina Howard

Deposition, p. 43, ll. 8 – 16; Jimmy Carver Deposition, p. 41, ll. 19 – 25; p. 42, ll. 1 – 5; Betina Howard Deposition, p. 41, ll. 20 – 23)

29. Mrs. Howard has no knowledge of Smith County policies that would allow or encourage the actions she assails in this case. (Howard Dep. 80:17-25)

**RESPONSE:** For the purposes of this Summary Judgment Motion, paragraph 29 is not disputed. However, Defendant Lankford states that the policy and procedure manual he had for the Smith County Sheriff's Department was not in effect when he took office and that the deputies followed verbal procedures. Defendant Lankford also stated that some of his deputies were trained by J.D. Masters but that he is not aware of Masters' qualifications to train and teach. (Lankford Deposition, p. 48, ll. 9 – 20; p. 50, ll. 21 – 25; p. 51, ll. 1 – 14) The negligence in training, supervision, and discipline may not be public knowledge; therefore Plaintiff could not have had knowledge of the training of Deputy Huddleston until after discovery. Defendant Lankford allowed a person to train and teach some of his officers without making himself aware of the person's qualifications. He further was not aware of what specifically was taught. As a result of this negligent training and supervision, an officer violated the constitutional rights of a Smith County citizen.

Deputy Huddleston stated that he was not aware that any employee of the Sheriff's Department was ever disciplined under the previous sheriff's term in office or under Defendant Lankford. He also stated that there is no discipline at the Smith County Sheriff's Office that he is aware of. (Huddleston Deposition, p. 26, ll. 11 – 16)

Also, Plaintiff Anthony Howard registered a complaint with the Smith County Sheriff's Office about the treatment of his wife and the complaint was never addressed. (Anthony Howard Deposition, p. 36, ll. 17 – 25; p. 37, ll. 1 – 25; p. 38, ll. 1 – 25; p. 39, ll. 1 – 25; p. 40, ll. 1 – 7)

**Respectfully submitted this 6th day of July, 2011.**

*/s/ Richard M. Brooks*
**RICHARD M. BROOKS - #4308**
130 Third Avenue West
Carthage, TN 37030
(615) 735-0807 – Phone
(615) 735-1921 – Fax
utkrmb@comcast.net - Email

*/s/ Michael Savage*
**MICHAEL SAVAGE - #020276**
101 East Court Square
Livingston, Tennessee 38570-1839
(931) 823-3690 – Phone
(931) 823-3693 – Fax
mslaw@twlakes.net - Email

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 6th day of July, 2011, a true and exact copy of the foregoing has been served in accordance with the ECF Guidelines and the Federal Rules of Civil Procedure upon the following parties:

**ROBYN WILLIAMS, ATTORNEY**
Farrar & Bates, LLP
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219

*/s/ Richard M. Brooks*
**RICHARD M. BROOKS**